429 A.2d 703

Anthony J. KUBIT, Administrator of the Estates of Joseph Charles Kubit, Deceased, Anna P. Kubit, Deceased, and Susan Kubit, Deceased, and Joanne Kubit, Joseph E. Kubit and Timothy B. Kubit, Minors, by Anthony J. Kubit, their paternal uncle and natural guardian, Appellants,

v.

John Willard RUSS, Jr., and the Township of Richland, a Municipal Corporation.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed May 8, 1981.

---

30

R. Kenneth Willman, Pittsburgh, for appellants.
Thomas A. Lazaroff, Pittsburgh, for appellees.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

This is an appeal from the denial of the motion of appellants Kubit,[1] plaintiffs below, for a new trial following a jury verdict in favor of appellee Township of Richland.[2] The facts of the case as well as the issues are set forth in the lower court's en banc opinion as follows:

Shortly before 9:30 p. m., on October 6, 1973, there was a minor two-car collision on the southbound side of Route 8 (a four-lane highway running generally north and south) near its intersection with Dickie Road. Dickie Road intersects Route 8 on its west, or southbound side. The Richland Township police responded to a report of the accident, and found the two cars stopped in the curb lane of Route 8 and, partially, on Dickie Road. One of the drivers, Robert Miele, was using a flare to divert traffic into the southbound passing lane. While Lieutenant Hopper investigated the accident and directed the removal of the vehicles from Route 8, Officer Sciolla placed Mr. Miele's flare to the rear of the two police cars, which were parked behind the cars involved in the accident, and placed another flare approximately 90 feet farther back. A short time later, after all the cars had been moved off Route 8, Officer Sciolla moved the flares to the berm, but did not extinguish them.

Meanwhile, a car driven by Theodore Yannotti was proceeding toward the scene of the accident in the southbound curb lane of Route 8. According to his deposition, which was introduced at trial (Mr. Yannotti then being in Ecuador), he noticed the glow of the flares when he was

1. Anthony J. Kubit, Administrator of the Estate of Joseph Charles Kubit, Deceased, Anna P. Kubit, Deceased, and Susan Kubit, Deceased; and Joanne Kubit, Joseph E. Kubit, and Timothy B. Kubit, Minors, by Anthony J. Kubit, their paternal uncle and natural guardian.

2. The jury returned a verdict in favor of appellants against defendant Russ. There has been no appeal with regard to the verdict against Russ.

some 500 yards away from them. "A couple hundred feet" later he moved into the passing lane to avoid the obstruction which he believed the glow indicated, and slowed down to about 35 miles an hour. "At least a couple hundred yards" after switching to the passing lane, near the scene of the initial accident, Yannotti was overtaken and struck by the car driven by defendant Russ. The Russ car glanced off the rear of Yannotti's vehicle and veered left into the northbound Kubit vehicle. A passenger in the Russ car testified in her deposition that she and another passenger had requested that Russ slow down—she stated that the car was going as fast as 90 miles per hour at the time of, or immediately prior to, the collision. She also stated that she observed the Yannotti vehicle in the passing lane as it approached the top of the hill (the collision occurred at the top of the hill), when the Russ vehicle was near the Richland Restaurant. Another witness, Officer Martin, testified that the Richland Restaurant was located between 600 and 900 feet from the point where the flares appeared to be located. In light of the disastrous consequences of the collision, the court ruled that the liability and damage portions of the trial were to be bifurcated in order to avoid undue prejudice to the defendants. This ruling has not been raised in the motion for a new trial.

The trial court excluded portions of the proposed testimony of Ronald Monaca, a Pennsylvania state trooper, and James Crutchman, a Penn Hills, Pa., police officer. To summarize, plaintiffs' offers of proof with respect to both men (insofar as those officers relate to the present motion) stated that they would testify: (1) to the manner of lighting and extinguishing flares; (2) as experts in the use of flares at accident scenes; or alternatively, (3) as to their experience regarding the "practice and procedure" or "custom and usage" of police in using flares.... With respect to these three areas, the officers were permitted to testify only about the physical process of lighting and extinguishing of flares. The trial court sustained Richland Township's objection that Officer Monaca had not

been listed as an expert witness pursuant to Pennsylvania Rule of Civil Procedure 212, and also indicated its doubts about the permissibility of allowing what it characterized as expert testimony via the second and third areas listed above. (T. 127). Later in ruling upon Richland Township's objection to Officer Crutchman's proposed testimony, the court resolved those doubts against plaintiffs. (T. 160). Plaintiffs continue to argue that these witnesses should either have been permitted to testify as experts in the field of police use of flares at accident scenes or, alternatively, to their experience regarding the custom of police as to that subject.

Appellants contend that it was reversible error for the trial court to refuse to permit Officer Crutchman to "testify with respect to his experience indicating when flares should or should not be extinguished." (R.R. 261a).[3] They argue that Officer Crutchman should have been permitted to testify in this regard either as an expert in the field of police use of flares at accident scenes, or, alternatively, based upon his experience regarding the custom of police in extinguishing flares. Appellants suggest that the prejudicial effect of this testimony was demonstrated when the jury returned with a question as to the existence of a standard rule regarding the extinguishing of flares.[4]

3. The offer of proof regarding the proposed testimony of Officer Crutchman stated that the officer would testify as to the "practice and procedure, the standard operating procedure in Penn Hills, which is a municipality in Allegheny County, as to extinguishing flares after the scene of an accident has been cleared, absent some compelling reason not to do so. He'll testify as to his experience in other municipalities and his training concerning extinguishing flares, and to provide a standard of reasonable police conduct in the community." (R.R. 256a). The issues regarding the exclusion of the testimony of Trooper Monaco and Officer Crutchman are the same except that the admissibility of Monaco's testimony was clouded by the appellant's failure to list Monaco as an expert witness as required by the court under Pa.R.C.P. No. 212. Thus, for reasons of simplicity and clarity this opinion will hereinafter make reference only to the exclusion of the proposed testimony of Officer Crutchman.

4. The following two-part question was submitted to the trial court by the jury after it had retired to deliberate:

■ We first note that while testimony regarding "custom and usage" is often presented by experts, it must be distinguished from expert opinion testimony. "A custom or usage of trade must be established as a matter of fact and not of opinion; hence witnesses must testify to its existence as a fact. It must be proved by instances and not by opinion." 32 *C.J.S.* Evidence § 546(76), p. 298. Evidence presented in terms of custom may be admissible on issues which would not properly be the subject of expert opinion. Thus, an expert may not be permitted to testify as to whether or not a certain practice is a safe one, but he may, if properly qualified, testify as to whether or not the common usage of a business had been adhered to by the defendant. *Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 224, 189 A. 331, 335 (1937). "Much may depend, in a given ruling, on the form in which the witness's knowledge is asked for." *II Wigmore on Evidence* (Chadbourn Revision, 1979) § 461, at 608.

■ The admission of expert testimony is, of course, a matter within the discretion of the trial court, and its

"Is there a standard rule for Pennsylvania regarding the extinguishing of flares or 'fusees' after the scene of an accident has been cleared? Does this ruling apply to the Richland Police." (R. 301) The trial court's instruction in response (which is not challenged on appeal) was as follows:

THE COURT: Very well. Ladies and Gentlemen, there is no evidence in this case with respect to any standard rule for the extinguishing of flares or fusees after the scene of an accident has been cleared, nor am I aware of any such standard rule. There being no evidence of such a standard rule, nor any of us being aware of such standard rule, obviously there would be no such standard rule applying to the Richland Police. As I indicated to you in the charge, it is your responsibility and duty to determine from the facts as you find them and the circumstances which existed as you find them from the evidence to determine whether the failure of the Richland Police to extinguish the flares after clearing the scene of the accident constituted negligence. That's your responsibility. You will have to determine from all of the facts and circumstances as you find them whether that failure constituted negligence at all, and beyond that if you should find that that failure constituted negligence you will have to determine whether that negligence was a substantial factor in the happening of the accident, which is the subject matter of the suit. (R. 304-305).

decision will not be reversed unless a clear abuse of that discretion is shown. *Laubach v. Haigh*, 433 Pa. 487, 491, 252 A.2d 682, 683 (1969); *Junk v. East End Fire Dept.*, 262 Pa.Super. 473, 396 A.2d 1269 (1978). Expert testimony is admissible when it involves explanations and inferences not within the ordinary training, knowledge, intelligence and experience of the jury. *Auerbach v. Philadelphia Transportation Co.*, 421 Pa. 594, 604, 221 A.2d 163, 171 (1963). On the other hand, "[e]xpert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject." *Collins v. Zediker*, 421 Pa. 52, 53–54, 218 A.2d 776, 777 (1966) (*Quoting Burton v. Horn & Hardart*, 371 Pa. 60, 88 A.2d 873). The trial court found that the jury was capable by virtue of reason and common experience, to evaluate the conduct of the employees of the Township in failing to extinguish the flares. As a result, it excluded expert testimony on the issue. This finding was well within the area of discretion of the trial court and we therefore find no error in the exclusion of the proffered testimony as expert testimony.

While Officer Crutchman was properly denied the opportunity to express an expert opinion on whether the flares should have been extinguished, his proposed testimony as to the customary conduct of police in similar circumstances was admissible. Evidence of the custom or practice prevailing in a particular business in the use of methods, machinery and appliances is admissible when offered either by a plaintiff to prove negligence or by a defendant in an attempt to disprove negligence. *Jemison v. Pfeifer*, 397 Pa. 81, 152 A.2d 697 (1959); *Fox v. Keystone*, 326 Pa. 420, 192 A. 116 (1937); 32 *C.J.S.* Evidence § 546(76).

Though admitting that there may have been error in excluding the testimony as to custom, the lower court en banc concluded that the error was non-prejudicial and thus did not require a new trial. It premised this conclusion primarily on the theory that "the jury was fully informed as to the circumstances of the accident and the facts regarding

the manner by which flares are extinguished, and was given instructions (and heard arguments) concerning the standard of conduct by which the issue of negligence was to be determined. Plaintiffs had a fair opportunity to prove, and the jury a sufficient basis to find (if it so chose), negligence on the part of the defendant Richland Township."

■ We cannot agree with the lower court's holding that the error was not prejudicial. It is true that error in excluding evidence is harmless if the excluded evidence would have only repeated evidence that was otherwise admitted. *9 Standard Pennsylvania Practice* 529. See also: *Zimmerman v. Pennsylvania R. Co.*, 302 Pa. 406, 153 A. 721 (1931); *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941. However, here the evidence being excluded by the lower court was not cumulative but was different in nature from the evidence otherwise admitted. While there was extensive evidence as to the circumstances of the accident and as to the physical acts involved in lighting and extinguishing flares, no evidence was presented going to the point that appellants wished to establish through Officer Crutchman's testimony as to what standard police practice in extinguishing flares was. (See n. 3 *supra*).

■ The reason evidence of customary practice is admissible is to help the jury decide whether the defendant violated the duty of care it owed the plaintiff. It is, of course, true that evidence of customary practice is not conclusive; whether the defendant exercised due care must be decided on the basis of all the evidence. In a particular case, it may be that customary practice does not represent due care. *Hemrock v. Peoples Natural Gas Company*, 423 Pa. 259, 223 A.2d 687 (1966); *MacDougall v. Pennsylvania Power & Light Co.*, 311 Pa. 387, 166 A. 589 (1933). It does not follow from this fact, however, that the wrongful exclusion of evidence of customary practice is harmless error. For if the evidence had been admitted, the jury might have decided on the basis of all of the evidence—including the evidence of customary practice—that the defendant had

been negligent. Indeed the jury's inquiry raised that very question, which appellants were prepared to answer.

Reversed and remanded for a new trial.